IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**DALE SPENCER,**

    **Petitioner,**

  v.                            **CASE NO. 2:05-cv-1111**
                                      **JUDGE SMITH**
**EDWIN VOORHIES, JR., Warden,**     **MAGISTRATE JUDGE KEMP**

    **Respondent.**

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. This matter is before the Court on the instant petition, respondent's return of writ, and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

## I. FACTS AND PROCEDURAL HISTORY

The Ohio Tenth District Court of Appeals summarized the facts and procedural history of this case as follows:

> Defendant-appellant, Dale D. Spencer, appeals from a judgment of the Franklin County Court of Common Pleas convicting him of one count of murder, with a firearm specification....
>
> On November 30, 2001, defendant was indicted on one count of murder, in violation of R.C. 2903.02,[FN1] with a firearm specification. The matter was heard before a jury in May 2003. On May 20, 2003, the jury found defendant guilty of murder, with a firearm specification. The trial court entered judgment convicting defendant of murder, with the specification, and sentenced defendant to 15 years to life in prison on the murder charge and an additional three years in prison for the firearm specification....

> FN1. Under R.C. 2903.02(A), "[n]o person shall purposely cause the death of another[.] R.C. 2903.02(D) provides that [w]hoever violates this section is guilty of murder[.]"

\*\*\*

.

> On the evening of November 16, 2001, Christian Bradley was killed by a single gunshot wound to his chest.[FN2] The police arrived at the scene of the crime approximately 30 seconds after two gunshots were fired. (Testimony of Columbus Police Officer John Davis, Tr. 35-36.) After the police arrived at the scene, they immediately separated witnesses. (Tr. 36.) According to Officer Davis, when the police separated witnesses, "a lot of people said they didn't see anything. And then * * * we ended up getting a little bit of information." *Id.* Officer Davis testified that Dale Spencer was developed as a suspect at the scene of the crime. According to Officer Davis, Brandon Mitchell told Officer Davis that he did not know who was the person that had been shot. (Tr. 45.)

> FN2. Patrick Fardal, M.D., a stipulated expert in the area of pathology, performed an autopsy of the victim, Mr. Bradley. Dr. Fardal testified at trial that Mr. Bradley died "solely, exclusively from a gunshot wound to his chest with injuries through his heart and his vena cava, his right lung. Basically he bled to death internally." (Tr. 216.)

> Officer Smith Weir testified that he arrived at the scene of the crime immediately after Officers Ward and Davis. According to Officer Weir, after he attempted to separate witnesses, he initially was unable to "get much response in terms of description, or any witnesses, credible witnesses at the time." (Tr. 53.) According to Officer Weir, in his preliminary discussions with Devin Jackson, Devin Jackson said that he did not know who shot the victim. (Tr. 58.) At some point, Devin Jackson provided Officer Weir with a vague description of an unknown male that fled the scene.

> Thaira Medley, who was 17 years old at the time of trial, was called as a witness on behalf of the state. Ms. Medley was Mr. Bradley's girlfriend. She described the events that led to the lethal shooting of her boyfriend as follows. On the evening of November 16, 2001, Ms. Medley played a joke on Mr. Bradley and hid in the backseat of his car. Mr. Bradley entered the car and drove around the neighborhood,

apparently searching for Ms. Medley. When Mr. Bradley stopped the car at a red light, Ms. Medley let Mr. Bradley know she was in the car, and Mr. Bradley laughed. Mr. Bradley continued to drive the car until he parked in front of Devin Jackson's grandmother's house. Mr. Bradley exited the car. Ms. Medley remained in the backseat of the car. According to Ms. Medley, defendant approached Mr. Bradley, and the two conversed. Ms. Medley testified that defendant pulled out a gun and shot Mr. Bradley, and Mr. Bradley fell to the ground. Defendant fired another shot, and Ms. Medley ducked to the floor. Once she determined that the gunshots had ceased, Ms. Medley exited the car, ran to Latasha Harrington's house, and called 911. A tape recording of the 911 call was played for the jury at trial and was admitted into evidence. (Tr. 93.)

Ms. Medley testified that she had previously seen defendant at Ms. Harrington's house. Also, Ms. Medley recalled working with defendant at Taco Bell. Ms. Medley identified defendant at the scene of the crime when she was shown a single photograph, which was shown to her by the police. At trial, Ms. Medley identified defendant in the courtroom. (Tr. 100-101.) After Ms. Medley identified defendant in the courtroom, the prosecutor asked Ms. Medley, "is there any doubt in your mind that Dale Spencer is the man that shot Chris that night?" Ms. Medley replied, "No." (Tr. 101.)

Brandon Mitchell, a cousin of Devin Jackson, testified on behalf of the state. A warrant relating to Mr. Mitchell's failure to pay a ticket for driving without a valid operator's license was set aside prior to Mr. Mitchell testifying. (Tr. 120-121.) Also, at the time of the shooting, Mr. Mitchell had a pending felony carrying a concealed weapon charge. (Tr. 119.) Later, Mr. Mitchell pled guilty to a misdemeanor carrying a concealed weapon charge. Mr. Mitchell testified that he was talking with Rashanna Tucker outside his grandmother's house on the evening of November 16, 2001. At some point, Mr. Bradley, whom Mr. Mitchell did not know, pulled up in a car, got out of the car, and started to talk with Devin Jackson. Mr. Mitchell was standing across the street from Devin Jackson and Mr. Bradley. Mr. Mitchell testified that defendant talked with him and Ms. Tucker, walked across the street, and then argued with Mr. Bradley. According to Mr. Mitchell, Mr. Bradley initiated a physical confrontation with defendant by swinging his fist at defendant. Thereafter, both were swinging at each other. (Tr. 116.) The fight ended when, according to Mr. Mitchell, "Dale backed up and shot twice. The dude dropped." (Tr. 117.) As to what happened after the

shooting, Mr. Mitchell stated, "I looked at Dale Spencer and he looked at me. I asked him, I said what are you still standing there for, and he left ." (Tr. 118.) Mr. Mitchell identified defendant in the courtroom. (Tr. 117.)

Mr. Mitchell testified that, when the police arrived, he attempted to walk away from the scene, but the police stopped him. (See Tr. 118-119, 125.) Mr. Mitchell also acknowledged that initially he lied to the police by telling the police that he knew nothing about the shooting. (Tr. 122.) According to Mr. Mitchell, after the police started to blame him for the shooting, and after his grandmother and aunt encouraged him to tell the truth, he decided to tell the truth. (Tr. 122-123.)

Ms. Tucker testified that, after she heard gunshots, she saw "Dale" run. (Tr. 142.) At trial, Ms. Tucker did not know "Dale's" last name. It is not clear from the record whether Ms. Tucker identified defendant as the person that she saw running from the scene of the crime. (See Tr. 142 ["Q. What did you see? A. I saw Dale run. Q. Dale, this person? A. (nodding)."] )

Devin Jackson testified on behalf of the state. Regarding the night of the shooting, he testified that, as he was crossing the street, he heard a gunshot, and then turned around and saw the second shot. (Tr. 153.) Devin Jackson saw defendant holding a gun. (Tr. 153.) Devin Jackson also testified that he "saw the fire from the gun." (Tr. 173.)

After the police arrived, Devin Jackson was placed into a detective's car. Devin Jackson acknowledged that, in a taped interview with Detective Daniel McGahhey on the night of the shooting, Devin Jackson stated that he did not see a gun. (Tr. 169, 175.) Devin Jackson testified that he was shown a single photograph by a detective and was asked to identify the person. (Tr. 170.)

Defendant testified at trial. According to defendant, on the evening of November 16, 2001, Mr. Bradley punched defendant in the mouth, which caused defendant to fall to the ground. At trial, defendant stated that he was "dazed from the punch" and when he looked up, there were "more people standing around than there was when I was, just before I punched in the mouth." (Tr. 256-257.) According to defendant, he thought that someone was "going to jump" him. (Tr. 257.) Consequently, he "got up and started running." *Id.* Defendant testified that, as he was running away, he heard two gunshots, and he

4

> feared that they were directed at him. *Id.* Defendant made sure he was okay and then went to his home. The next day, November 17, 2001, defendant learned that there was a warrant for his arrest. Defendant turned himself in at the Columbus Police Headquarters on November 22, 2001.

Exhibit 8 to Return of Writ.

Represented by new counsel, petitioner filed a timely appeal. He asserted the following assignments of error:

> ASSIGNMENT OF ERROR ONE
>
> THE DEFENDANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
>
> ASSIGNMENT OF ERROR TWO
>
> THE DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED BY THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

*See id.* On August 5, 2004, the state appellate court affirmed the judgment of the trial court. *Id.* Petitioner filed a timely appeal to the Ohio Supreme Court, wherein he raised the same propositions of law. Exhibit 9 to Return of Writ. On December 29, 2004, the Ohio Supreme Court denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question. Exhibit 11 to Return of Writ.

On December 8, 2005, petitioner filed the instant *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. As his sole claim for federal habeas corpus relief, petitioner asserts as follows:

> Denial of effective assistance of counsel.

5

> Since trial counsel failed to challenge the strongest part of the state's case, the identifications, the defendant was denied the effective assistance of counsel.

It is the position of the respondent that this claim is without merit.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner asserts as his sole claim for federal habeas corpus review that he was denied the effective assistance of counsel because his attorney withdrew a motion to suppress the in-court identifications of petitioner as constitutionally prohibited. The state appellate court rejected this claim as follows:

> [D]efendant asserts that he was denied effective assistance of trial counsel. In order to establish ineffective assistance of counsel, defendant must meet the two-part test outlined in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. First, defendant must demonstrate that his trial counsel's performance was deficient. Namely, defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. We observe that a strong presumption exists that trial counsel's conduct or omissions are within the wide range of reasonable professional assistance. *Id.* at 689. In other words, "[t]here is a strong presumption that licensed attorneys are competent and that the challenged action is the product of sound trial strategy." *State v. Nichols* (1996), 116 Ohio App.3d 759, 764, 689 N.E.2d 98. Therefore, a court reviewing an ineffective assistance of counsel claim must determine whether, under the circumstances, the acts or omissions were "outside the wide range of professionally competent assistance." *Strickland,* at 690.
>
> Second, in order for defendant to establish ineffective assistance of trial counsel, defendant must demonstrate that the deficient performance prejudiced defendant. This requires defendant to show "that counsel's error were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. In other words, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

>On December 19, 2001, counsel for defendant filed a motion to suppress identification, arguing that "any identification evidence of the Defendant by all the prosecuting witnesses be suppressed" because "[t]he evidence should show such pre-trial identification was secured by means that were unnecessarily suggestive and conducive to irreparable mistake in identification." However, at trial, defendant's counsel withdrew said motion. Defendant argues on appeal that his trial counsel committed error by withdrawing the motion to suppress the identification evidence. More specifically, defendant argues that "counsel was deficient and the defendant was prejudiced because of the failure to challenge what is apparently inadmissible identification testimony prior to trial." (Defendant's brief, at 9.) We find defendant's argument with respect to the decision of defendant's trial counsel to withdraw the motion to suppress identification to be without merit.
>
>Defendant has failed to demonstrate that trial counsel's performance was objectively deficient. Defendant's original counsel filed a motion to suppress identification prior to trial, and defendant's subsequent trial counsel took affirmative action and withdrew said motion at trial. When defendant's trial counsel withdrew the motion to suppress, he did not provide a reason for the withdrawal. (See Tr. 6.) Considering it would have been proper for the trial court to deny said motion, as discussed *infra*, we conclude that the decision to withdraw the motion to suppress was a tactical decision within the realm of reasonable professional judgment.
>
>Trial counsel's withdrawal of the motion to suppress did not prejudice defendant because the motion would have been denied. We note that the "[f]ailure to file a motion to suppress constitutes ineffective assistance of counsel only if, based on the record, the motion would have been granted." *State v. Randall,* Franklin App. No. 03AP-352, 2003-Ohio-6111, at 15, citing *State v. Robinson* (1996), 108 Ohio App.3d 428, 670 N.E.2d 1077. In order for defendant to have prevailed with a motion to suppress identification evidence, defendant would have been required to show that the procedure used by the police to gather evidence in this case, namely the use of the single photograph at the scene of the crime, was "unnecessarily suggestive and conducive to irreparable mistaken identification." *Stovall v. Denno* (1967), 388 U.S. 293, 302, 87 S.Ct. 1967, 18 L.Ed.2d 1199. When determining "whether under the 'totality of the circumstances' the identification was reliable even though the

> confrontation procedure was suggestive * * * the factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Neil v. Biggers* (1972), 409 U.S. 188, 199, 93 S.Ct. 375, 34 L.Ed.2d 401.
>
> In this case, the identifications by the witnesses at the scene of the crime occurred a short time after the shooting, and the witnesses' degree of attention was likely elevated at the time of the shooting. Furthermore, Ms. Medley testified that she was familiar with defendant prior to the shooting. Upon our consideration of the circumstances of this case, including the above facts, we can only conclude that if the motion had not been withdrawn, it would have been proper for the trial court to deny the motion to suppress identification evidence. Therefore, trial counsel's decision not to pursue the motion to suppress identification resulted in no prejudice to defendant.
>
> For the foregoing reasons, we conclude that defendant was not denied effective assistance of counsel. Consequently, we overrule defendant's ... assignment of error.

Exhibit 8 to Return of Writ.

Under 28 U.S.C. §2254(e)(1), the state court's factual findings are entitled to a presumption of correctness:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

*Id*. Additionally, the state court's decision is binding on this Court unless that decision is contrary to or involves an unreasonable application of clearly established federal law as determined by the

United States Supreme Court:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d).

> A state court's determination is contrary to federal law when the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or on indistinguishable facts. *Williams v. Taylor,* 529 U.S. 362, 412-13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court's decision is an unreasonable application of federal law when the state court correctly identified the applicable legal principle from Supreme Court precedent, but applied that principle to the facts before it in an unreasonable manner. *Id.* at 413, 120 S.Ct. 1495.

*Maldonado v. Wilson*, 416 F.3d 470, 475 (6th Cir. 2005). Petitioner has failed to meet this standard here.

The right to counsel guaranteed by the Sixth Amendment is the right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). The standard for reviewing a claim of ineffective assistance of counsel is twofold:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the

9

> defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987). "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689.

To establish prejudice, it must be shown that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Id.,* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*, at 697. Because petitioner must satisfy both prongs of the *Strickland* test to demonstrate ineffective assistance of counsel, if the Court determines that petitioner has failed to satisfy one prong, it need not consider the other. *Strickland,* 466 U.S. at 697.

Identification testimony based on a pre-trial procedure that is so "impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification" violates a criminal defendant's right to due process. *Thigpen v. Cory*, 804 F.2d 893, 895 (6th Cir. 1986), quoting *Simmons v. United States,* 390 U.S. 377, 384 (1968); *see also Stovall v. Denno*, 388 U.S. 293 (1967). "It is the likelihood of misidentification which violates a defendant's right to due process.*"* *Neil v. Biggers*, 409 U.S. 188, 198 (1972). The Court must first determine whether the pre-trial identification procedure employed was unduly suggestive*.* *Ledbetter v. Edwards*, 35 F.3d 1062, 1070-71 (6th Cir. 1994). If so, the Court must then consider the totality of the circumstances in order

to determine if the identification is nevertheless reliable. *Id.*, at 1070, citing *United States v. Hill,* 967 F.2d 226, 230 (6th Cir. 1992); *Neil v. Biggers, supra*, 409 U.S. at 199-200; *Thigpen v. Cory, supra,* 804 F.2d at 895. In making this determination, the Court must consider the following five factors:

> (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention at the time of observation; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness when confronting the defendant; and (5) the length of time between the crime and the confrontation.

*Ledbetter v. Edwards, supra*, 35 F.3d at 1070, citing *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977); *Neil v. Biggers, supra*, 409 U.S. at 199-200.

Petitioner asserts that "evidence produced at trial indicates that the eyewitness identifications may have been the product of coercive and suggestive police techniques." *Petition*. He contends that there could have been no reasonable trial strategy in failing to litigate a motion to suppress the in-court identifications of petitioner where there was no physical evidence linking petitioner to the crime. The Court is not persuaded by petitioner's arguments.

As noted by the state appellate court, Thaira Medley, identified petitioner by name to police. She knew petitioner through her sister's husband and had worked with him at Taco Bell. *Transcript*, at 95, 97-98. Brandon Mitchell, Devin Jackson, and Rashanna Tucker, who also identified petitioner, all knew petitioner prior to the incident in question. All of the foregoing witnesses had sufficient and ample opportunity to observe petitioner prior to or during the shooting since, as detailed by the state appellate court, petitioner approached Tucker and Mitchell and spoke with them before he approached the victim's car and shot him. Jackson saw petitioner arguing with Bradley,

the victim, before petitioner fired the gun. Jackson identified petitioner by name to the police. *Id.*, at 152, 155. Medley watched Bradley, her boyfriend, arguing with petitioner from the back of Bradley's car. She saw petitioner shoot Bradley. *Id.*, at 78. Petitioner then fired a shot toward the car, and she ducked. *Id.*, at 79. After the shooting, Mitchell stated that

> I looked at Dale Spencer and he looked at me. I asked him... what are you still standing there for, and he left.

*Id.*, at 118.

Contrary to petitioner's allegations, nothing in the record shows that any of the identifications of petitioner by any of the foregoing witnesses was impermissibly suggestive or constitutionally prohibited. Under such circumstances petitioner has failed to establish the ineffective assistance of counsel for failing to argue the motion to suppress in-court identifications of petitioner. Petitioner likewise cannot establish that the state court's denial of this claim is so unreasonable as to justify federal habeas corpus relief. *See Williams v. Taylor, supra*.

In view of the foregoing, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

If any party objects to this *Report and Recommendation*, that party may, within ten (10) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the

magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation*.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

```
                                        /s/ Terence P. Kemp
                                        United States Magistrate Judge
```